UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEREK BOXHORN,<br><br>      Plaintiff,<br><br>-against-<br><br>RODGERS SILICON VALLEY ACQUISITION CORP., THURMAN J. RODGERS, EMMANUEL T. HERNANDEZ, STEVEN J. GOMO, JOSEPH I. MALCHOW, JOHN D. MCCRANIE, and LISAN HUNG,<br><br>      Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Derek Boxhorn ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Rodgers Silicon Valley Acquisition Corp. ("Rodgers Silicon" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Rodgers Silicon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed series of transactions (the "Proposed Transaction") between Rodgers Silicon and Enovix Corporation (together with its subsidiaries referred to as "Enovix"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. The Company's Chief Executive Officer and Chairman of the Board, Defendant Rodgers, stands on both sides of the

1

Proposed Transaction and so full disclosure of the information omitted from the Registration Statement is necessary to ensure that shareholders are fully informed.

2. On February 22, 2021, Rodgers Silicon entered into an Agreement and Plan of Merger (the "Merger Agreement"). On March 8, 2021, in order to convince Rodgers Silicon shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading registration statement on Form S-4 with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

3. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) Enovix's financial projections; (ii) valuation analyses conducted by ThinkEquity, a division of Fordham Financial Management, Inc. ("ThinkEquity"); (iii) compensation to be received by the Company's financial advisor, Oppenheimer & Co. Inc. ("Oppenheimer") both in its role as an advisor and in its role as the sole book-running manager in the Company's initial public offering ("IPO"); (iv) additional information concerning the expected post-merger equity ownership of Defendant Rodgers and compensation to be received in the Proposed Transaction; and (v) information concerning the sales process.

4. The special meeting for Rodgers Silicon stockholders to vote will be scheduled in the coming weeks, as the transaction is expected to close in the second quarter of 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can make an informed vote and properly exercise his corporate suffrage rights.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and for breaching their

fiduciary duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed herein is disclosed to Rodgers Silicon's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' misconduct.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.

Indeed, the Company's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff Derek Boxhorn is, and at all relevant times has been, a holder of Rodgers Silicon common stock.

12. Defendant Rodgers Silicon Valley Acquisition Corp. is a blank check company and maintains its principal executive office is located at 535 Eastview Way Woodside, CA 94062. Rodgers Silicon's securities are quoted on the Nasdaq stock exchange under the ticker symbol "RSVA".

13. Individual Defendant Thurman J. "T.J." Rodgers has served as the Chief Executive Officer and Chairman of the Board at all relevant times.

14. Individual Defendant Emmanuel T. Hernandez has served as the Company's Chief Financial Officer and as a director at all relevant times.

15. Individual Defendant Steven J. Gomo has served as director of the Company at all relevant times.

16. Individual Defendant Joseph I. Malchow has served as director of the Company at all relevant times.

17. Individual Defendant John D. McCranie has served as director of the Company at all relevant times.

18. Individual Defendant Lisan Hung has served as a director of the Company at all relevant times.

19. The Individual Defendants referred to in ¶¶ 13-18 are collectively referred to herein

4

as the "Individual Defendants" and/or the "Board", and together with Rodgers Silicon they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.   **Background and the Proposed Transaction**

20.   Rodgers Silicon is a blank check company formed for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization or similar business combination with one or more businesses.

21.   Enovix is a company focused in advanced silicon-anode lithium-ion battery development and production. The Company's proprietary 3D cell architecture increases energy density and maintains cycle life. Enovix is building a silicon-anode lithium-ion battery production facility in the U.S. The Company's initial goal is to provide designers of mobile devices with a high-energy battery so they can create more effective portable products.

22.   On February 22, 2021, Rodgers Silicon issued a press release announcing the Proposed Transaction (the "Merger Announcement"), which states in relevant part:

> **Advanced Silicon Battery Company Enovix to Become a Public Company Through Merger with Rodgers Silicon Valley Acquisition Corp.**
>
> FREMONT, Calif., Feb. 22, 2021 /PRNewswire/ -- Enovix Corporation ("Enovix" or the "Company"), the leader in the design and manufacture of next generation 3D Silicon™ Lithium-ion batteries, and Rodgers Silicon Valley Acquisition Corp. (Nasdaq: RSVA, RSVAU, RSVAW) ("Rodgers" or "RSVAC"), a special purpose acquisition company ("SPAC"), today announced that they have entered into a definitive agreement and plan of merger for a business combination that will result in Enovix becoming a publicly listed company. Upon closing of the transaction, which is expected to occur in the second quarter of 2021, the company will be named Enovix Corporation and is expected to remain listed on the Nasdaq Stock Market under the new ticker symbol, "ENVX".  The transaction reflects an estimated pro forma enterprise value for the combined company of approximately $1.128 billion.
>
> Enovix has designed, developed, and sampled advanced Lithium-ion batteries with energy densities five years ahead of current industry production. The company's

first products include batteries with energy densities as high as 900 Wh/L. This breakthrough alters a 30-year trajectory of energy density improvements (<4.4% annually) by the Li-ion battery industry, which is modest by the standards of Silicon Valley and Moore's Law. Unlike traditional "jelly roll" Li-ion batteries, Enovix products are encased in precision stainless steel and manufactured with a high-speed precision stacking process. This proprietary 3D cell architecture enables Enovix to use silicon as the only active lithium cycling material in the anode.

The proceeds from this transaction will enable Enovix to build out its first two production facilities to support demand from blue chip customers in fast-growing mobile computing markets (wearables, mobile communications, PCs and AR/VR), totaling 1.78 GWh of capacity, while continuing to develop cells for EVs.

*   *   *

**Transaction Overview**

The transaction reflects an implied pro forma enterprise value of $1.128 billion. Upon the closing of the business combination, and assuming no redemptions of shares of Rodgers by its public stockholders, Enovix will receive approximately $385 million in net cash, after expenses. The proceeds will be funded through a combination of approximately $230 million cash in trust by Rodgers and a $175 million concurrent PIPE of common stock issued at $14 per share, anchored by leading institutional investors.

The boards of directors of both Enovix and Rodgers have unanimously approved the proposed transaction, which is expected to be completed in the second quarter of 2021. The transaction is subject to, among other things, the approval of the stockholders of both Enovix and Rodgers, satisfaction or waiver of the conditions stated in the definitive merger agreement (the "Merger Agreement") and other customary closing conditions, including a registration statement on Form S-4 being declared effective by the U.S. Securities and Exchange Commission (the "SEC"), the receipt of certain regulatory approvals, and approval by The Nasdaq Stock Market LLC to list the securities of the combined company.

*   *   *

**Advisors**

Oppenheimer & Co. Inc. is serving as financial advisor, and Loeb & Loeb LLP is serving as legal advisor to Rodgers Silicon Valley Acquisition Corp. Oppenheimer & Co. Inc. and Williams Trading, LLC are serving as placement agents on the PIPE offering. Cooley LLP is serving as legal advisor to Enovix, and Winston & Strawn LLP is serving as legal advisor to the placement agents.

23.     Defendant Rodgers has a substantial interest in effectuating a merger with Enovix.

Defendant Rodgers, the Chief Executive Officer and Chairman of the Board, is a member of the board of directors of Enovix, and owns, through a trust, approximately 11.3% of all issued and outstanding Enovix common stock (on a fully-diluted and as-converted to common stock basis). Rodgers Silicon is his namesake, and he is its founder. Indeed, he is the principal of Rodgers Capital, LLC the Sponsor of the Company. Should the Proposed Transaction be consummated he stands to significantly increase his equity ownership in Enovix and bypass the traditional IPO process to take Enovix—a company where he was already a member of the board—public. In so doing, Defendant Rodgers may unjustly enrich himself in the Proposed Transaction and so shareholders must have all material information available to assess the fairness of the Proposed Transaction.

24. Accordingly, it is imperative that shareholders receive this material information in order have an informed vote on the Proposed Transaction. Otherwise, shareholders face potentially significant financial loss should they not receive information necessary to value their shares.

## II. The Registration Statement Omits Material Information

25. On March 8, 2021, Defendants filed the materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Transaction.

26. *First*, the Registration Statement omits any of Enovix's projections, including its cash flow projections. The Registration provides that ThinkEquity, in connection with its fairness

opinion, "reviewed historical and projected financial information prepared by Enovix and RSVAC management concerning." But the Registration Statement does not provide any financial forecasts relating to Enovix that were furnished to Rodgers Silicon. Indeed, the Registration Statement does not provide any information concerning the valuation of Enovix at all, despite ThinkEquity utilizing this information in its *Discounted Cash Flow Analysis*. Management and the Individual Defendants have meaningful insight into the Company's financial future and valuation that the market does not. By choosing to withhold the Company's projections, the Board has chosen to blindfold stockholders to fundamental valuation information.

27.     This omission is especially egregious as Enovix is likely to have negative cash flows for the foreseeable future, and stockholders need to see the expected returns (or lack thereof) of the company they are being asked to acquire. Further, Enovix is a private company, such that stockholders have no means to evaluate the adequacy of the Exchange Ratio (as defined in the Merger Agreement) compared to their current holdings in the Company (which trades on a public market). Stockholders are instead being asked to dilute their position in the Company, and to accept a new stake in a pro forma entity containing Enovix. Without providing these cash flows, Company stockholders have no way of analyzing the projected returns from their new holdings in Enovix.

28.     In order to correct these material omissions, to the extent the data is readily available, Defendants must disclose any financial projections created by the Company including the following line items: (i) Total Revenues; (ii) Total Expenses; (iii) Net Income/Loss; (iv) Cash Flows; (v) Dividends; and (vi) line-item projections underlying their calculation. Failure to do so will result in shareholders not having all material information available, and should the Proposed Transaction be consummated, will cause shareholders to lose the intrinsic value of their shares.

29.     *Second*, the Registration Statement describes ThinkEquity's fairness opinions and

8

valuation analyses performed in support of their opinions yet omits important inputs and assumptions that ThinkEquity utilized in their calculations. Defendants concede the materiality of this information in citing ThinkEquity's fairness opinion and its valuation analyses among the reasons for recommending the merger to shareholders. Without this information, as described below, Rodgers Silicon shareholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in deciding whether to vote in favor of the Proposed Merger. The following omitted information, if disclosed, would significantly alter the total mix of information available.

30. With respect to ThinkEquity's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the financial projections as adjusted by management of RSVAC; (ii) the financial projections prepared by management of RSVAC and supplied to ThinkEquity by Enovix and RSVAC; (iii) the illustrative terminal values; (iv) the assumptions and basis for multiplying projected 2025 revenue by a factor of 10; (v) the assumptions and basis for utilizing a discount rate of 15%; (vi) the estimated weighted average cost of capital; and (vii) all other inputs and assumptions that were utilizing in deriving a valuation of approximately $1.6 billion in equity value.

31. With respect to ThinkEquity's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis, as well as ThinkEquity's bases for selecting the companies observed. Considering that Panasonic and Samsung are listed as comparable companies, stockholders have a clear interest in understanding how a company with negative cash flows may be deemed comparable.

32. Fairness opinions are fundamental to the M&A process and are ultimately what

stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost importance that stockholders have the analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

33.     ***Third***, the Registration Statement discloses that "representatives of Oppenheimer, financial advisor to RSVAC, reviewed certain information regarding Enovix with members of its

management including Mr. Rust, Mr. Dales and Ms. Chen, and asked additional questions regarding Enovix's business, financial results and future propects." Reg Stmt. at 81. Further, the Merger Announcement states that Oppenheimer acted as a financial advisor to the Proposed Transaction. Yet, the Registration Statement is silent about the amount of compensation to be received by the Oppenheimer for its services and/or if it has received compensation form Enovix within the past two years. This information is necessary to understand the Company's financial advisor's potential conflicts in its role advising the Board.

34. Additionally, in connection with the Company's December 2020 IPO, Oppenheimer served as the sole book-runner of the offering, deferring compensation which will become payable solely in the event that the Company completes an initial business combination. The Private Placement Warrants will expire worthless if Rodgers Silicon does not consummate a business combination within the requisite time period. As such, the Oppenheimer was clearly incentivized to assist the Company in the completion of a business combination. As it relates to the Proposed Transaction, shareholders must be provided with additional information relating to Oppenheimer's compensation in its role as a book-runner.

35. *Fourth*, the Registration Statement fails to identify the post-close employment for Defendant Rodgers. Most importantly, the Registration Statement fails to disclose how much equity Defendant Rodgers will gain the post-merger company from his role as a Sponsor and as the Chairman and Chief Executive Officer of the Company. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. *Fifth*, the Registration Statement states that the Company was discussing with

11

several other parties during the process that resulted in the Proposed Transaction. Yet, critically, the Registration Statement fails to disclose whether these discussions involved confidentiality agreements, and if so, whether these parties are thus currently subject to, standstill provisions and 'Don't Ask, Don't Waive' ("DADW") provisions.

37. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     The omission of information from a Registration Statement will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

42.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things, (i) Enovix's financial projections; (ii) valuation analyses conducted by ThinkEquity; (iii) compensation to be received by Oppenheimer both in its role as an advisor and in its role as the sole book-running manager in the Company's IPO; (iv) additional information concerning the expected post-merger equity ownership of Defendant Rodgers and compensation to be received in the Proposed Transaction; and (v) information concerning the sales process.

43.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

44.     The Individual Defendants knew or were negligent in not knowing that the

Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

46.     Rodgers Silicon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

47.     The misrepresentations and omissions in the Registration Statement are material

and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the special meeting of Rodgers Silicon's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Rodgers Silicon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. By virtue of their role as directors and/or officers of the Company, the Individual

Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

58.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

59.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Rodgers Silicon shareholders to vote on the Proposed Transaction or consummating the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 5, 2021        **MONTEVERDE & ASSOCIATES PC**

                */s/ Juan E. Monteverde*
                Juan E. Monteverde (JM-8169)
                The Empire State Building
                350 Fifth Avenue, Suite 4405
                New York, NY 10118
                Tel: (212) 971-1341
                Fax: (212) 202-7880
                Email: jmonteverde@monteverdelaw.com

                *Attorneys for Plaintiff*